

FILED BY CLERK
K.S. D. RICT COURT
THIRD JUDICIAL DIST.
TOPEKA KS

2007 JUL 23 PM 4 15

### IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
### DIVISION SEVEN

| | | |
|---|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | No. 06-C-72 |
| MICHELLE C. GRAHAM, et al., | ) ) | |
| Defendants. | ) ) | |

## MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF MORTGAGE REGISTRATION SYSTEMS, INC. AND SUMMARY JUDGMENT OF DEFENDANT COUNTRYWIDE HOME LOANS, INC.

Plaintiff Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc. ("MERS") and Defendant Countrywide Homes Loans, Inc. ("Countrywide"), pursuant to K.S.A. 60-256 and Kansas Supreme Court Rule 141, moves the Court to grant summary judgment in their favor and find as a matter of law: (1) MERS is entitled to an *in personum* judgment against Graham; (2) MERS is entitled to foreclose on the Property, as well as a finding that MERS is the holder of a first and prior lien on the Property and Graham's redemption period following sale of the Property is limited to 3 months; and (3) that all claims raised by Defendants Michelle Graham and David Martinez fail as a matter of law, leaving only the issue of damages on MERS' foreclosure for resolution by the Court.

EXHIBIT
2

In further support of this Motion, MERS and Countrywide submit contemporaneously herewith their Memorandum in Support of Motion for Partial Summary Judgment.

WHEREFORE, for the foregoing reasons, MERS and Countrywide respectfully request that the Court grant summary judgment in their favor.

Respectfully submitted,

BRYAN CAVE LLP

By: _Staci O. Schorgl_

Staci Olvera Schorgl     KS Bar #19753
Rebecca S. Jelinek     KS Bar #20322
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64105
(816) 374-3200
(816) 374-3300 (Facsimile)

Attorneys for Plaintiff and Defendant
Countrywide Home Loans, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via U.S. Mail, postage prepaid, this 23rd day of July, 2007, to:

Paul D. Post
Paul D. Post, P.A.
Shadow Wood Office Park
5897 SW 29th Street
Topeka, KS 66614

Attorney for Defendants
Michelle Graham and David Martinez

_Staci O. Schorgl_

Attorney for Plaintiff and Defendant
Countrywide Home Loans, Inc.

2

KC01DOCS\864300.1

FILED BY CLERK
K.S. DISTRICT COURT
THIRD JUDICIAL DIST.
TOPEKA, KS.

2007 JUL 23 PM 4 16

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
DIVISION SEVEN

| | |
|---|---|
| MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MICHELLE C. GRAHAM, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   No. 06-C-72<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF MOTION FOR
## PARTIAL SUMMARY JUDGMENT OF PLAINTIFF
## MORTGAGE REGISTRATION SYSTEMS, INC. AND SUMMARY
## JUDGMENT OF DEFENDANT COUNTRYWIDE HOME LOANS, INC.

Plaintiff Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc. ("MERS") and Defendant Countrywide Homes Loans, Inc. ("Countrywide"), pursuant to K.S.A. 60-256 and Kansas Supreme Court Rule 141, set forth the following Memorandum in Support of MERS' Motion For Partial Summary Judgment and Countrywide's Motion for Summary Judgment.

### I.    BACKGROUND

This action began as a simple foreclosure. However, due to the desperate attempts of Defendants Michelle Graham and David Martinez (collectively "Defendants") to avoid foreclosure on property for which they have failed to make a payment in years, Countrywide (through MERS) has been denied the ability to foreclose on the property and recoup the loan proceeds. Instead, Countrywide has been forced to

pay property taxes on the property, retain insurance on the property, and defend against Defendants' baseless claims. Defendants' time is up. As a matter of law, MERS is entitled to foreclose on the property and to obtain a judgment against Defendant Michelle Graham ("Graham") personally. Moreover, MERS and Countrywide are entitled to judgment as a matter of law in their favor on all of Defendants' claims.

On August 14, 2002, Graham entered into a Note and Mortgage (collectively the "Loan") with Countrywide on the property located at 3700 SW Nottingham Road, Topeka, Kansas, 66614 (the "Property"). Under the Loan, Graham promised to pay to Countrywide the principal sum of $140,000 plus interest in monthly installments beginning October 1, 2002. However, with the exception of one payment in August 2005, Graham has failed to make a *single* payment on the Loan in more than 3 years (since May 2004). On January 18, 2006, Countrywide (through MERS) filed this action, seeking to foreclose on the Property and for a judgment personally against Graham.

In a desperate attempt to avoid foreclosure and remain on the Property for free, Defendants added Countrywide to this action and filed claims against both MERS and Countrywide, alleging MERS and Countrywide engaged in fraud and violated the Kansas Consumer Protection Act ("KCPA"), K.S.A. 50-623 *et seq.* However, Defendants' claims are unsupported by Kansas law and the undisputed facts in this case. Defendants' claims are based solely upon the alleged false "offer" of a loan modification. There is no evidence the "offer" was false. Indeed, it was Defendants failure to comply with the requirements necessary to move forward with the loan modification that resulted in their failure to obtain such modification. There is also no evidence that the "offer" was deceptive or unconscionable in violation of the KCPA.

KC01DOCS\862951.4

Moreover, even if the "offer" could support a claim by Defendants (which it does not), as a matter of law, neither MERS nor Countrywide is liable in this action. The "offer" was made by an employee of an independent contractor of Countrywide. It is well settled that Countrywide cannot be held liable for the torts of an independent contractor. Likewise, neither can MERS. Indeed, other than the filing of this action, Defendants have no evidence of any actions directed at them by MERS or any MERS' employee. Furthermore, Defendants have no evidence of any damages that occurred as direct result of any actions by Countrywide or MERS. Accordingly, MERS and Countrywide are entitled to judgment as a matter of law in their favor on all of Defendants' claims.

## II.     <u>STATEMENT OF UNCONTROVERTED FACTS</u>

<u>The Loan</u>

1.     On August 14, 2002, Defendant Michelle Graham ("Graham") executed a Mortgage on the property located at 3700 SW Nottingham Road, Topeka, Kansas 66614 (the "Property"). *See* Exhibit 1, Mortgage; Exhibit 2, Deposition of M. Graham, Vol. I, 76:8-77:1.

2.     The Mortgage was recorded on August 15, 2002, Document Number 170026, in Volume 3681, Page 22, in the Office of the Register of Deeds of Shawnee County, Kansas. *See* Exhibit 1, Mortgage.

3.     On August 14, 2002, Graham executed a Note in favor of Countrywide in the principal amount of $140,000.00 with interest accruing at the annual rate of 8.625%. *See* Exhibit 2, Deposition of M. Graham, Vol . I, 73:22-74:9; Exhibit 3, Note.

4.     Upon execution of the Note and Mortgage (collectively the "Loan"),
Countrywide provided the $140,000 that was used by Graham to purchase the Property.
*See* Exhibit 1, Mortgage; Exhibit 3, Note; Exhibit 4, Deposition of M. Graham, Vol. II,
271:6-24.

5.     Under the Note, Graham agreed that in return for the loan she received she
would pay $140,000.00, plus interest, to Countrywide. *See* Exhibit 3, Note, ¶ 1.

6.     Graham agreed to make monthly payments to Countrywide, with the first
payment due October 1, 2002. *See* Exhibit 3, Note, ¶ 3.

7.     Graham agreed: "If I do not pay the full amount of each monthly payment
on the date it is due, I will be in default." *See* Exhibit 3, Note, ¶ 6(B).

8.     Under the Mortgage, Graham covenanted:

Borrower [Graham] shall pay when due the principal of, and interest on,
the debt evidenced by the Note and any prepayment charges and late
charges due under the Note.  Borrower shall also pay funds for Escrow
Items pursuant to Section 3. . . .

*See* Exhibit 1 Mortgage, at p. 3, ¶ 1.

9.     The Mortgage provides:

Borrower shall be in default if, during the Loan application process,
Borrower or any persons or entities acting at the direction of Borrower or
with Borrower's knowledge or consent gave materially false, misleading,
or inaccurate information or statements to Lender (or failed to provide
Lender with material information) in connection with the Loan. . . .

*See* Exhibit 1, Mortgage, at p. 6, ¶ 8.

10.    The Mortgage also provides:

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secured to Lender [Countrywide]:   (i) the
repayment of the Loan, and all renewals, extensions and modifications of
the Note; and (ii) the performance of Borrower's covenants and
agreements under the Security Instrument and the Note.  For this purpose,

4

Borrower mortgages and warrants to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the [Property] . . . TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. . . . Borrower understands and agrees that . . . MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender . . .

*See* Exhibit 1, Mortgage, at p. 2-3.

### The Default

11.     When Graham entered into the Loan, she was employed at Southwestern Bell and earned slightly over $5,300 per month ($63,600 annually). *See* Exhibit 5, Uniform Residential Loan Application, at p. 2.

12.     In October 2003, Graham was laid off by Southwestern Bell. *See* Exhibit 2, Deposition of M. Graham, Vol. I, 38:1-6; 39:3-6.

13.     The last regular monthly payment Graham made on the Loan was in May of 2004. *See* Exhibit 2, Deposition of M. Graham, Vol. I, 47:4-8; Exhibit 4, Deposition of M. Graham, Vol. II, 129:4-25; Exhibit 6, Payment History.

14.     Since May of 2004, Graham has made only one other payment toward the balance due on the Loan. This payment was made in August of 2005. *See* Exhibit 6, Payment History; Exhibit 7, Affidavit of D. DeLoney, ¶ 9.

15.     On January 18, 2006, MERS filed the Petition to Foreclose Mortgage ("Petition") in this action. *See* Petition.

16.     At the time MERS filed the Petition, Graham was delinquent on the Note by 19 monthly payments. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 6.

5

17.     Since the filing of the Petition, no payments have been made on the Loan. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 8.

18.     Additionally, Graham has testified that the application for the Loan contained a false statement. *See* Exhibit 2, Deposition of M. Graham, Vol. I, 69:17-70:6.

19.     The current principal balance due on the Loan (excluding interest, late fees, and other charges) is $138,122.25. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 10.

20.     Since July of 2004, Graham has not paid any property taxes or insurance on the Property. *See* Exhibit 4, Deposition of M. Graham, Vol. II, 131:2-9; Exhibit 7, Affidavit of D. DeLoney, ¶ 11.

21.      As a result of Graham's delinquency, Countrywide has paid $17,057.19 in property taxes and insurance on the Property. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 12.

<u>Bankruptcies</u>

22.     On September 10, 2004, MERS filed a Petition to Foreclose Mortgage in this Court. *See* Shawnee County Court file, Case No. 04-C-1243.

23.     However, on August 27, 2004, Defendants filed bankruptcy in the United States District Court for the District of Kansas, Case No. 04-42364 ("Bankruptcy I"). *See* Exhibit 8, Bankruptcy I Court Docket; *see also* Exhibit 9, Affidavit of R. Jelinek, ¶ 3.

24.     The September 10, 2004 foreclosure action was dismissed without prejudice on November 1, 2004. *See* Shawnee County Court file, Case No. 04-C-1243.

25.     On December 7, 2004, the Trustee in Bankruptcy I moved to dismiss the bankruptcy for lack of feasibility, Defendants' failure to file an amended bankruptcy plan, and Defendants' failure to provide a paystub for Defendant David Martinez

KC01DOCS\862951.4

("Martinez"). On February 10, 2005, the Bankruptcy Court granted the Motion. *See* Exhibit 10, December 7, 2004 Motion to Dismiss; Exhibit 11, February 10, 2005 Order; *see also* Exhibit 9, Affidavit of R. Jelinek, ¶ 3

26. On May 12, 2005, Defendants filed bankruptcy in the United States District Court for the District of Kansas, Case No. 05-41499 ("Bankruptcy II"). *See* Exhibit 12, Bankruptcy II Court Docket; *see also* Exhibit 9, Affidavit of R. Jelinek, ¶ 3.

27. On August 29, 2005, MERS filed a Motion for Relief from Stay in the Bankruptcy Court on the basis Defendants had failed to make any of the three post-bankruptcy monthly payments on the Loan as required by the bankruptcy plan. *See* Exhibit 13, Motion for Relief from Stay; *see also* Exhibit 9, Affidavit of R. Jelinek, ¶ 3.

28. On November 9, 2005, the Bankruptcy Court orally granted MERS' Motion for Relief from Stay, noting that "debtor has no objection to relief from stay being granted." *See* Exhibit 14, November 9, 2005, Courtroom Minute Sheet; *see also* Exhibit 9, Affidavit of R. Jelinek, ¶ 3.

29. On November 30, 2005, the Bankruptcy Court entered an order granting MERS' Motion for Relief from Stay. *See* Exhibit 15, November 30, Order; *see also* Exhibit 9, Affidavit of R. Jelinek, ¶ 3.

30. Bankruptcy II was dismissed on January 9, 2006. *See* Exhibit 16, January 9, 2006 Order; *see also* Exhibit 9, Affidavit of R. Jelinek, ¶ 3.

31. Bankruptcy II was dismissed as a result of Defendants' failure to make payments under the bankruptcy plan. *See* Exhibit 16, January 9, 2006 Order; Exhibit 17, Deposition of M. Brunton, 13:10-14:5; *see also* Exhibit 9, Affidavit of R. Jelinek, ¶ 3.

KC01DOCS\862951.4

## Other Defendants in Foreclosure Action

32. In filing this action, Chase Manhattan Mortgage Corporation ("Chase Manhattan Mortgage") and Homeowners Mortgage Company, LLC ("Homeowners Mortgage") were named as Defendants and alleged to have, if at all, a lien junior and inferior to MERS' lien on the Property. *See* Petition, ¶¶ 13-14.

33. Personal service on Chase Manhattan Mortgage and Homeowners Mortgage was attempted but unsuccessful. *See* Court file, Return of Service on Chase Manhattan Mortgage, filed February 7, 2006; Court file, Return of Service on Homeowners Mortgage, filed February 6, 2006.

34. MERS' counsel filed an Affidavit for Service by Publication in this action on January 18, 2006, identifying Chase Manhattan Mortgage and Homeowners Mortgage as defendants on whom service by publication was sought. *See* Court file, Affidavit for Service by Publication, filed January 18, 2006.

35. MERS published Notice of Suit in the Shawnee County Ledger for 3 consecutive weeks, beginning February 16, 2006. *See* Court file, Proof of Publication, filed March 6, 2006.

36. Neither Chase Manhattan Mortgage nor Homestead Mortgage has filed an Answer or otherwise responded to the Petition. *See* Court file.

## McCalla, Raymer

37. McCalla, Raymer is a law firm located in Roswell, Georgia, that is independent of Countrywide. *See* Exhibit 18, Deposition of G. Craig, 16:10-14.

38. Countrywide contracted with McCalla, Raymer to handle and manage home mortgage loans for which Countrywide is the servicer (such as the Loan entered

8

into by Graham) which are in foreclosure or bankruptcy. *See* Exhibit 7, Affidavit of D. DeLoney, ¶¶ 14-15.

39. Countrywide does not control the day to day activities of McCalla, Raymer (or its employees) in handling and managing such loans. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 16.

40. Countrywide does not have the right to discharge any of McCalla, Raymer's employees. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 17.

41. Countrywide did not (nor did it have the ability to) monitor or supervise McCalla, Raymer or any of McCalla, Raymer's employees. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 18.

42. Graham's Loan was targeted by McCalla, Raymer (not Countrywide) as a loan for which a possible "workout" could be reached. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 19; Exhibit 19, August 16, 2005 letter from A. Roche.

<u>Loan Modification</u>

43. While Bankruptcy II was pending, by letter dated August 16, 2005, McCalla, Raymer, through its employee Adam Roche, contacted Michael Brunton ("Brunton"), Defendants' bankruptcy counsel. The letter provided, in part:

> [T]his loan has been targeted for a possible workout with our client. Enclosed is a blank Financial Statement for your client's completion. Please discuss and share the following option with your client.
>
> • **If you wish to keep the property**, and your loan is delinquent, an available option includes modifying the loan. This would involve adding the delinquent amounts due on your existing principal balance, and/or extending the maturity date. This would bring your loan to a current status, with a new monthly-modified payment.

KC01DOCS\862951.4

If you wish to pursue the above option, complete the one page financial statement & workout questionnaire and provide copies of the following for the loan modification request only:

- A **current** (within last month pay stub for **ALL** individuals contributing to the household);
- Evidence of any source of income (social security, disability, food stamps, and/or unemployment
- Evidence of assistance from family members, if applicable.

*This information will help determine whether your client qualifies for the opportunity offered by our client or if any other options are available.*

*     *     *

**Attention**

*We will take all actions permitted by law to protect our client's rights independent of this offer. We expect that you will consent to relief from the automatic stay or assist in obtaining court approval should a loss mitigation alternative be approved, but we can not guarantee approval.*

*See* Exhibit 2, Deposition of M. Graham, Vol. I, 101:2-18; Exhibit 17, Deposition of M. Brunton, 10:25-11:5; Exhibit 19, August 16, 2005 letter from A. Roche (emphasis in original).

44.     As their attorney, Brunton was authorized by Defendants to act on their behalf. *See* Exhibit 2, Deposition of M. Graham, Vol. I, 102:1-8.

45.     Adam Roche was an employee of McCalla, Raymer and not an employee of Countrywide. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 13; Exhibit 18, Deposition of G. Craig, 6:18-7:8.

46.     Gloria Craig is a manager of the loss mitigation department of McCalla, Raymer. She testified that the intent in sending the August 16, 2005 letter was:

to allow the debtor or give the debtor an alternative to the bankruptcy that we know historically does not perform very well, to give them an alternative so that we can modify the loan, take all the arrears, add it to the

10

principal balance, spread it out, make it a performing loan that they can, in fact, be able to pay their mortgage payment and perform with the loan.

*See* Exhibit 18, Deposition of G. Craig, 6:18-21; 7:15-8:19.

47.    In response to the August 16, 2005 letter, on September 21, 2005, Defendants submitted the following information to McCalla, Raymer:

- "We have increased our income by $1,500/m.";

- Graham was employed by the United States Postal Service and was also drawing unemployment income;

- Martinez was employed by Combined Insurance;

- Defendants' combined monthly net employment income was $1,710.00 and Defendants' monthly unemployment income was $1,248.00, for a total monthly net income of $2,958;

- Defendants' monthly expenses (including their monthly mortgage payment of $1,524.00 to Countrywide) were $2,447.00.

*See* Exhibit 4, Deposition of M. Graham, Vol. II, 143:9-13; 148:15-149:1; 158:17-159:5; 160:16-21; Exhibit 18, Deposition of G. Craig, 9:12-16; 43:1-4; Exhibit 20, Completed Workout Questionnaire.

48.    Graham was only entitled to draw unemployment income for 13-14 weeks at the maximum benefit amount of $312.00 per week.  Graham's unemployment benefits began on August 7, 2005.  Thus, at the time Defendants submitted their response to the August 16, 2005 letter, Graham had only approximately 2 additional months to receive this income.  *See* Exhibit 4, Deposition of M. Graham, Vol. II, 154:1-155:1; 155:25-157:10.

11

49. On October 26, 2005, McCalla, Raymer, through its employee Adam Roche, sent a letter to Brunton. The letter provided, in part, as follows:

> Based upon a review of your client(s) financial package received and bankruptcy schedules, your client's loan has been conditionally <u>pre-approved</u> by the Investor for a loan modification. The conditions are as follows:
>
> - Approval of motion for relief from the bankruptcy (or)
> - Dismissal of the bankruptcy (if chapter 13)
>
> Please be advised that final terms of the loans modification will be determined when the loan is released out of bankruptcy.
>
> ***If your client is interested in a loan modification with our client, please contact our office immediately to discuss further.*** Please be advised that if your client is interested in a loan modification that the debtor would be required to consent to relief from the stay or dismiss their bankruptcy. . . .

*See* Exhibit 21, October 26, 2005 letter from A. Roche (emphasis added in bold).

50. Fannie Mae is the investor on the Loan. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 33; Exhibit 18, Deposition of G. Craig, 47:25.

51. McCalla, Raymer has no record of Defendants (or Brunton) having contacting it in response to the October 26, 2005 letter. *See* Exhibit 18, Deposition of G. Craig, 12:3-23.

52. Brunton did not contact McCalla, Raymer in response to the October 26, 2005 letter. *See* Exhibit 17, Deposition of M. Brunton, 33:22-25; 34:8-11.

53. On November 14, 2005, McCalla, Raymer, through its employee Adam Roche, sent a letter to Brunton. In addition to restating the same language contained in the October 26, 2005 letter, the letter provided:

> **Please note that if we do not hear from your office regarding this matter by 11/21/05, we will be forced to close our file.**

*See* Exhibit 22, November 14, 2005 letter from A. Roche (emphasis in original).

12

KC01DOCS\862951.4

54.     McCalla, Raymer has no record of Defendants (or Brunton) having contacted it in response to the November 14, 2005 letter. *See* Exhibit 18, Deposition of G. Craig, 13:17-22.

55.     Brunton did not contact McCalla, Raymer in response to the November 14, 2005 letter. *See* Exhibit 17, Deposition of M. Brunton, 35:15-18.

56.     On November 30, 2005, McCalla, Raymer closed its file on Defendants. *See* Exhibit 18, Deposition of G. Craig, 13:23-25.

57.     McCalla, Raymer closed its file on Defendants because it received no response from Brunton or Defendants indicating an intent to proceed with the loan modification. *See* Exhibit 18, Deposition of G. Craig, 49:18-22.

58.     It was Brunton's practice to forward copies of letters (such as the August 16, 2005, October 25, 2005, and November 14, 2006 letters from McCalla, Raymer) to his clients and to discuss the contents of such letters. Brunton believes he did this in regard to the August 16, 2005, October 25, 2005, and November 14, 2005 letters from McCalla, Raymer and that Defendants were aware of the contents of these letters. *See* Exhibit 17, Deposition of M. Brunton, 32:4-21.

59.     Brunton was acting as counsel for Defendants when he received the August 16, 2005, October 25, 2005, and November 14, 2005 letters from McCalla, Raymer. *See* Exhibit 17, Deposition of M. Brunton, 32:13-33:5.

### MERS

60.     MERS was not involved with the servicing of the Loan. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 22.

KC01DOCS\862951.4

61.     Rather, MERS serves only as an electronic database that tracks changes in servicing rights and beneficial ownership by acting as mortgagee of record on mortgages registered in the database, allowing changes in servicing rights and beneficial ownership interests to be tracked electronically. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 23.

62.     MERS was created to eliminate the need for mortgage assignees to record assignments to protect their interests and to facilitate purchase and sale of mortgages in the secondary market. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 24.

63.     Defendants have no evidence that MERS (or any employee of MERS) contacted them. *See* Exhibit 2, Deposition of M. Graham, Vol. I,46:12-17; Exhibit 4, Deposition of M. Graham, Vol. II 238:1-22; Exhibit 7, Affidavit of D. DeLoney, ¶ 25.

64.     Defendants have no evidence of any relationship between MERS and McCalla, Raymer (or Adam Roche). *See* Exhibit 4, Deposition of M. Graham, Vol. II, 239:15-19; Exhibit 7, Affidavit of D. DeLoney, ¶ 26.

<u>Defendants' Claims</u>

65.     Defendants make claims in this action against MERS and Countrywide for fraud and violation of the Kansas Consumer Protection Act ("KCPA"). *See* Defendants' Cross-Claim; Defendants' Amended Counterclaim.

66.     Defendants' claim for fraud is based upon the representations and actions of Adam Roche of McCalla, Raymer. *See* Exhibit 4, Deposition of M. Graham, Vol. II, 254:19-256:8; Exhibit 23, Deposition of D. Martinez, Vol. I, 12:22-13:4; Defendants' Cross-Claim; Defendants' Amended Counterclaim.

67.     Defendants' claim for violation of the KCPA is based upon the letters from Adam Roche of McCalla, Raymer, which Defendants claim contained false

14

representations. *See* Defendants' Cross-Claim, ¶¶ 10-11; Defendants' Amended Counterclaim, ¶¶ 10-11.

68.     McCalla, Raymer was authorized to consider the financial information submitted by Defendants and to offer conditional pre-approval for a loan modification. *See* Exhibit 18, Deposition of G. Craig, 14:3-14.

69.     It was a condition of acceptance of the loan modification offered by McCalla, Raymer that a debtor or the debtor's counsel communicate with McCalla, Raymer. *See* Exhibit 18, Deposition of G. Craig, 48:23-49:8; Exhibit 21, October 26, 2005 letter; Exhibit 22, November 14, 2005 letter.

70.     McCalla, Raymer required this communication so that it would know whether Defendants were interested in the loan modification. *See* Exhibit 18, Deposition of G. Craig, 38:13-39:5.

71.     As Craig testified:

> We [McCalla, Raymer] need to know whether or not the debtors are still interested. Anything can be going on in their life. We don't know unless they communicate or unless the debtors' attorney let's us know.

*See* Exhibit 18, Deposition of G. Craig, 39:2-5.

72.     Ms. Craig developed the program under which the August 16, 2005, October 26, 2005, and November 14, 2006 letters were sent. As a result, she understands how the process works and knows what is required and what occurs as a result. *See* Exhibit 18, Deposition of G. Craig, 48:12-22.

73.     Defendants did not comply with the requirements of McCalla, Raymer's program in order to obtain the loan modification. *See* Exhibit 18, Deposition of G. Craig, 48:23-49:12; 50:5-14.

15

74. Countrywide did not control whether McCalla, Raymer determined that Defendants was pre-approved for a potential loan modification. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 20; Exhibit 18, Deposition of G. Craig, 10:4-15.

75. Countrywide did not conditionally pre-approve Defendants for a loan modification. *See* Exhibit 7, Affidavit of D. DeLoney, ¶ 21; Exhibit 21, October 26, 2005 letter; Exhibit 22, November 14, 2005 letter.

76. However, a loan modification was available to Defendants if Defendants (or their counsel) had contacted McCalla, Raymer and indicated an intent to go forward with a loan modification. *See* Exhibit 18, Deposition of G. Craig, 14:18-21; 43:17-44:3.

77. Defendants have no evidence that any of the statements contained in either the August 16, 2005, October 26, 2005, or November 14, 2005 letters from McCalla, Raymer were false. *See* Exhibit 17, Deposition of M. Brunton, 52:16-53:10; Exhibit 18, Deposition of G. Craig, 14:15-17;.

<u>Damages</u>

78. In response to an Interrogatory posed to Defendants requesting Defendants set forth the total amount of damages they are seeking and to explain how that amount was calculated, Defendants stated:

> $150,000.00 being the value of our home.
> Our attorney has advised us to file a motion for punitive damages prior to the pretrial.
> Statutory penalties as all owed by Kansas law.

*See* Exhibit 24, Defendant's Response to First Interrogatories of Plaintiff to Defendant Michelle Graham, No. 17; Exhibit 25, Defendant's Response to First Interrogatories of Plaintiff to Defendant David Martinez, No. 17.

16

79.     The Defendants were not offered any specific terms in connection with the offer to modify the Loan by McCalla, Raymer. *See* Exhibit 18, Deposition of G. Craig, 11:8-17.

80.     Defendants have no evidence of any actual damage as a result of failure to obtain a loan modification. *See* Exhibit 2, Deposition of M. Graham, Vol. II, 229:14-230:11; 280:21-281:4; Exhibit 17 Deposition of M. Brunton, 34:12-18.

81.     There is no evidence that Defendants have suffered any actual damage as a result of any actions taken by Countrywide. *See* Exhibit 4, Deposition of M. Graham, Vol. II, 240:17-241:17; 244:2-245:2.

82.     There is no evidence that Defendants have suffered any actual damage as a result of any actions taken by MERS. *See* Exhibit 4, Deposition of M. Graham, Vol. II, 240:17-241:17; 244:2-245:2; Exhibit 7, Affidavit of D. DeLoney, ¶¶25-26.

83.     If the Loan had remained in Bankruptcy II and Bankruptcy II had not been dismissed by the Court, Countrywide would have been entitled to collect the balance due under the Loan. *See* Exhibit 17, Deposition of M. Brunton, 42:17-43:23.

84.     Defendants have no evidence that Countrywide ever agreed to forgive the debt due under the Loan, in whole or in part. *See* Exhibit 17, Deposition of M. Brunton, 42:12-16.

85.     If relief from stay would not have been granted on November 30, 2005, the dismissal of Bankruptcy II on January 9, 2006, would have dissolved the stay and Countrywide would have been able to pursue foreclosure of the Property at that time. *See* Exhibit 17, Deposition of M. Brunton, 39:8-40:2.

KC01DOCS\862951.4

Countrywide's Efforts to Refinance
Graham's Loan in Early 2006
and Defendants' Financial Condition

86.     In response to calls from Defendants, in February 2006, Countrywide considered the Loan for modification or refinance. *See* Exhibit 4, Deposition of M. Graham, Vol. II, 215:22-216:2; Exhibit 7, Affidavit of D. DeLoney, ¶ 27.

87.     In order to consider the Loan for modification or refinance, Countrywide requested Defendants submit information regarding their current financial condition. *See* Exhibit 4, Deposition of M. Graham, Vol. II, 209:21-210:15; Exhibit 7, Affidavit of D. DeLoney, ¶ 28.

88.     In February 2006, Defendants sent their current financial information to Countrywide to be considered in connection with eligibility for a workout plan or modification. *See* Exhibit 4, Deposition of M. Graham, Vol. II, 214:8-18; Exhibit 7, Affidavit of D. DeLoney, ¶ 29.

89.     Defendants understood the workout plan being discussed with Countrywide in February 2006 was not the same as the one "offered" by Adam Roche. *See* Exhibit 4, Deposition of M. Graham, Vol. II, 214:8-18.

90.     The potential loan modification being discussed in February of 2006 with Countrywide would have resulted in payments higher than $1524 per month. *See* Exhibit 4, Deposition of M. Graham, Vol. II, 218:17-23; 225:16-226:7.

91.     In February 2006, Graham had a gross income of $2,400 per month. *See* Exhibit 4, Deposition of M. Graham, Vol. II, 222:5-16.

92.     In addition to the expenses identified by Defendants in the financial packet submitted to McCalla, Raymer in September 2005, Defendants' cable bill increased to

$55 a month (an increase of $28 per month), Defendants' telephone bill increased to $30 per month (an increase of $8 per month), Defendants' child care expenses are $250 per month (an increase of $250 per month), and Defendants' gas expenses decreased to $80 per month (a decrease of $80 per month) – resulting in a net change of an additional $205 per month in expenses. *See* Exhibit 20, Completed Workout Plan; Exhibit 26, Deposition of D. Martinez, Vol. II, 143:14-25; 145:10-18; 146:8-147:1.

93.     Martinez quit his employment with Combined Insurance after only one month. *See* Exhibit 23, Deposition of D. Martinez, Vol. I, 88:18-22.

94.     Martinez was not employed in January 2007, having only had one part-time job for a few months, at most, since September 2005. *See* Exhibit 23, Deposition of D. Martinez, Vol. I, 88:23-90:19.

95.     On February 22, 2006, Countrywide advised Graham that she would not qualify for a loan modification. *See* Exhibit 4, Deposition of M. Graham, Vol. II, 219:14-220:17; Exhibit 7, Affidavit of D. DeLoney, ¶ 30.

96.     Based on Defendants' current financial condition in February 2006 (gross income of $2,400 per month, monthly expenses of $2,652.00 (based on a monthly loan payment of $1,524.00), Defendants did not qualify for loan modification with Countrywide. *See* Exhibit 4, Deposition of M. Graham, Vol. II, 222:5-16; Exhibit 7, Affidavit of D. DeLoney, ¶ 31; Exhibit 20, Completed Workout Plan; Exhibit 26, Deposition of D. Martinez, Vol. II, 143:14-25; 145:10-18; 146:8-147:1.

### III.     STANDARD OF REVIEW

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there

KC01DOCS\862951.4

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." K.S.A. 60-256(c). The purpose of summary judgment is to avoid delay when there is no real issue of fact. *Willard v. City of Kansas City*, 235 Kan. 655, 657, 681 P.2d 1067 (1984). Although the Court is to resolve all facts and reasonable inferences in favor of the non-moving party, the non-moving party may not simply rely on allegations in the pleadings, but must come forward with specific facts to demonstrate a material issue that precludes judgment as a matter of law. *See* K.S.A. 60-256(e); *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000). Moreover, "[a] party cannot escape summary judgment on the mere hope that something may develop later in discovery or at trial by remaining silent and later claiming additional facts supporting a defense." *Vore v. U.S. Bank, N.A.*, Unpublished, Case No. 90,734, 2004 WL 324418, *3 (Kan. App. Feb. 20, 2004), *review denied*, May 25, 2004 (*quoting Colorado Interstate Gas Co. v. Beshears*, 271 Kan. 596, 607, 24 P.3d 113 (2001)).

## IV.   ARGUMENT & AUTHORITIES

### A.   MERS Is Entitled To Foreclose On The Property And For Entry of Judgment Against Graham Personally.

Under the Note, Graham agreed to be personally responsible for repayment of the $140,000 loaned to Graham to purchase the Property, plus the interest on such amount. *See* Uncontroverted Facts, ¶ 5. Under the Mortgage, Graham agreed that the Property would serve as security for the Loan. *See* Uncontroverted Facts, ¶¶ 1, 10. Graham agreed to make monthly payments on the Loan beginning October 1, 2002. *See* Uncontroverted Facts, ¶ 6. However, other than one payment made in August 2005, Graham ceased making payments on the Property more than 3 years ago (May 2004). *See* Uncontroverted Facts, ¶ 14. Moreover, Graham testified at her deposition that her

20

Loan Application – upon which reliance credit was extended to Graham – contained a false statement. *See* Uncontroverted Facts, ¶ 18. Accordingly, Graham is in default under both the Note and Mortgage, and MERS is entitled to foreclose on the Property and for a judgment against Graham personally. *See* Uncontroverted Facts, ¶ 6-10.

In this action, MERS also named Defendants Chase Manhattan Mortgage and Homeowners Mortgage. *See* Uncontroverted Facts, ¶ 32. Service on Chase Manhattan Mortgage and Homeowners Mortgage was properly accomplished by publication. *See* Uncontroverted Facts, ¶¶ 33-35; *see also* K.S.A. 60-307. In the Petition, MERS alleges that it is entitled to have the Mortgage foreclosed as a first and prior lien upon the Property. *See* Petition, ¶ 17. Neither Chase Manhattan Mortgage nor Homeowners Mortgage filed an Answer in this action or otherwise disputed MERS' entitlement to have its lien on the Property declared first and prior. *See* Uncontroverted Facts, ¶ 36. More than one year has passed since publication of the Notice of Suit. *See* Uncontroverted Facts, ¶ 35. Accordingly, as a matter of law, MERS is entitled to foreclose on the Property and to have its lien declared first and prior. *See* K.S.A. 60-255.

Furthermore, Graham defaulted on the Mortgage prior to paying one-third of the original debt. *See* Uncontroverted Facts, ¶¶ 3-4, 19. Pursuant to K.S.A. 60-2414(m):

> In the event a default occurs in the conditions of the mortgage or instrument of the most senior lien foreclosed before 1/3 of the original indebtedness secured by the mortgage or lien has been paid, the court shall order a redemption period of three months. . . .

Accordingly, MERS is also entitled to have the Court limit the time in which Graham shall be entitled to redeem the Property following sale of the Property to a period of 3 months.

KC01DOCS\862951.4

It cannot be disputed that Graham is in default on the Note and Mortgage, that no other parties to this action have claimed an interest superior to that of MERS, and that the redemption period is limited by statute to 3 months. Moreover, as set forth herein, Defendants' claims for fraud and violation of the KCPA relate to actions that allegedly occurred after the Note and Mortgage were executed. Defendants' counterclaim and cross-claim have no effect on MERS' right to foreclose on the Property and obtain a judgment against Graham personally under the Note and Mortgage. Accordingly, as a matter of law, MERS is entitled to both foreclose on the property and for a judgment *in personum* against Graham, leaving only the issue of damages on MERS' foreclosure claim for resolution by the Court. Furthermore, MERS is entitled to judgment as a matter of law that its lien on the Property is first and prior and that Graham's redemption period is limited to 3 months following sale of the Property.

## B.    Defendants' Claims Fail As A Matter Of Law.

In this action, Defendants assert claims against both MERS and Countrywide for fraud and violation of the KCPA. However, both of these claims are based upon the erroneous and unsupported allegation that the "offer" of loan modification by McCalla, Raymer was false. Moreover, Defendants attempt to impose liability where no such liability can exist as a matter of law, and without any evidence of damages. For these reasons, Defendants' claims fail as a matter of law.

### 1.    There Is No False Statement To Support A Claim For Fraud.

Under Kansas law, a claim for fraud must be proven by clear and convincing evidence. *Newell v. Krause*, 239 Kan. 550, Syl. ¶ 4, 722 P.2d 530 (1986). To sustain a claim for fraud, a party must show:

(1)     *An untrue statement of fact;*

(2)     That the untrue statement of fact was known to be untrue by the party
making it;

(3)     That the untrue statement of fact was made with the intent to deceive or
with reckless disregard for the truth;

(4)     That the untrue statement was justifiably relied on; and

(5)     That damages were sustained by the relying party.

*Alires v. McGehee*, 277 Kan. 398, 403, 85 P.3d 1191 (2004); *see also Vondracek v. Mid-State Co-op, Inc.*, 32 Kan. App. 2d 98, 101, 79 P.3d 197 (2003), quoting *Nordstrom v. Miller*, 227 Kan. 59, 65, 605 P.2d 545 (1980). As a matter of law, Defendants cannot sustain a claim for fraud against MERS or Countrywide – as Defendants have no evidence of any untrue statement of fact that would support such a claim (nor of any of the other necessary elements).

In support of their claim for fraud, Defendants allege:

the actions of the [sic] Countrywide . . . in offering to Martinez and Graham the option of restructuring their loan upon condition of granting stay relief in the bankruptcy, and then denying that such an offer had ever been made, was a false and misleading statement which Countrywide knew at the time it was made was false and misleading. Furthermore, Martinez and Graham relied upon this false and misleading statement to their detriment, namely, by agreeing to the stay relief in their bankruptcy which had the effect of freeing MERS and Countrywide from the automatic stay which had been entered by the bankruptcy court to protect Martinez and Graham.

*See* Defendants' Amended Counterclaim, ¶ 6. In setting forth a claim for fraud, a party must plead the claim with particularity. K.S.A. 60-209(b). Accordingly, the only alleged "untrue statement of fact" was the alleged false promise of a loan modification. However, Defendants have no evidence that the promise of a loan modification was false.

Indeed, the evidence is clear that the loan modification proposed by McCalla, Raymer was authorized and available to Defendants. *See* Uncontroverted Facts, ¶¶ 68, 76. Defendants simply failed to fulfill the requirements necessary (and which were fully disclosed to Defendants) in order to proceed with the loan modification. *See* Uncontroverted Facts, ¶¶ 49, 53, 69, 73. Because evidence of an untrue statement of fact is necessary to sustain a claim of fraud and no such evidence exists, Countrywide and MERS are entitled to summary judgment on this claim. *See Bomhoff v. Nelnet Loan Servs., Inc.*, 279 Kan. 415, 422, 109 P.3d 1241 (2005), citing *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131-32, 955 P.2d 1189 (1998) (movant is entitled to summary judgment where movant establishes absence of evidence necessary to support an essential element of claimant's claim).

### 2. There Is No Deceptive Or Unconscionable Act Or Practice That Would Support A Claim For Violation Of The KCPA.

The KCPA provides that no "supplier" shall engage in any "deceptive" or "unconscionable" act or practice in connection with a "consumer transaction." *See* K.S.A. 50-626(a); K.S.A. 50-627(a).[1] It is well established that interpretation of the KCPA is a question of law. *See, e.g., CIT Group/Sales Financing, Inc. v. E-Z Pay Used Cars, Inc.*, 29 Kan. App. 2d 676, 685, 32 P.3d 1197 (2001). Moreover, it is well recognized that summary judgment is proper where there is no evidence of deceptive or unconscionable acts or practices. *See Bomhoff*, 279 Kan. at 424.

---

[1] Under the KCPA, "consumer transaction" is defined as "a sale, lease, assignment or other disposition for value of property or services within this state (except insurance contracts regulated under state law) to a consumer; or a solicitation by a supplier with respect to any of these dispositions." K.S.A 50-624.

<u>Deceptive Act or Practice</u>

Defendants, relying upon the October 26, 2005 letter from McCalla, Raymer, contend MERS and Countrywide committed a "deceptive" act or practice in violation of K.S.A. 50-626 in the following ways: (1) through the willful use of a written representation which constituted a falsehood (K.S.A. 50-626(b)(2)); and (2) through the willful concealment of a material fact (K.S.A. 50-626(b)(3)). *See* Defendants' Cross-Claim,¶ 10; Defendants' Amended Complaint, ¶ 10.[2] However, under either of these provisions, evidence of intent is required in order to prove a violation of the KCPA. *See Gonzales v. Associates. Financial Serv. Co. of Kansas, Inc.*, 266 Kan. 141, 166, 967 P.2d 312 (1998) (in granting summary judgment, court held there was no evidence lender "purposely withheld relevant information or misstated facts with the intention of deceiving [plaintiff]" and thus there was no claim under KCPA).

Accordingly, for the same reason, Defendants cannot sustain a claim for fraud, Defendants cannot sustain a claim for violation of the KCPA. There is no evidence that any statements made in the October 26, 2005 letter (or the November 14, 2005 letter) were false. *See* Uncontroverted Facts, ¶ 77. Defendants also have no evidence that Countrywide or MERS "concealed" any material fact in the alleged offer of refinance. The requirement that Defendants contact McCalla, Raymer and advise whether they were interested in a loan modification was expressly set forth in both the October and November letters. *See* Uncontroverted Facts, ¶ 49, 53. Contrary to Defendants'

---

[2] The KCPA defines a "deceptive" act or practice to include the following:

 * * *

(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;

(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact;

 * * *

K.S.A. 50-626(b).

KC01DOCS\862951.4

allegations, these letters do not provide that allowing the stay in bankruptcy to be lifted or dismissing the bankruptcy alone were the only requirements necessary to effectuate a loan modification. *See* Uncontroverted Facts, ¶¶ 49, 53. The material requirement that Defendants contact McCalla, Raymer was not concealed. *Cf. Miles v. Love*, 1 Kan. App. 2d 630, 632-33, 573 P.2d 622 (1977) (for silence to be actionable as fraudulent concealment, defendants must have actual knowledge of information being concealed, and such information must not be within fair and reasonable reach of party claiming fraud or discoverable by reasonable diligence). There is no evidence of any deceptive act or practice that would support Defendants' claim for violation of the KCPA.

<u>Unconscionable Act or Practice</u>

Defendants allege MERS and Countrywide violated the KCPA through the alleged "unconscionable" "false" offer of refinancing in violation of K.S.A. 50-627. The KCPA states, in relevant part:

> In determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier ***knew or had reason to know***, such as, but not limited to the following, that:
>
> > (1) The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of the agreement, or similar factor;
>
> *    *    *

K.S.A. 50-627(b) (emphasis added). The unconscionability of an act or practice is a legal question for the Court. *See* K.S.A. 50-627(b); *State ex rel. Stovall v. Confimed.com, LLC*, 272 Kan. 1313, 1317, 38 P.3d 707 (2002).

Simply put, there is no evidence of unconscionability that would support Defendants' claim. First, there is no evidence that the offer of a loan modification was

KC01DOCS\862951.4

false. *See* Uncontroverted Facts, ¶ 77. Furthermore, the October and November letters stated: "If . . . . interested in a loan modification . . . please contact our office immediately to discuss further." *See* Uncontroverted Facts, ¶ 49, 53. Moreover, the November letter explicitly stated: "**Please note that if we do not hear from your office regarding this matter by 11/21/05, we will be forced to close our file.**" *See* Uncontroverted Facts, ¶ 53. There is nothing that would support that it was known or should have been known that Defendants would not follow the express terms of the letters and contact McCalla, Raymer if Defendants were interested in pursuing the loan modification.

It is notable that the requirement of communication is not a requirement without a purpose. McCalla, Raymer requires that it be contacted and advised by the debtor (or their counsel) that there is an intent to move forward with a loan modification, because allowing the bankruptcy stay to be lifted or dismissing the bankruptcy alone could be the result of other motivations. *See* Uncontroverted Facts, ¶¶69-71. Additionally, this is not a situation where an unsophisticated individual has been taken "advantage of" as is contemplated by the KCPA. *See* K.S.A. 50-627(b)(1). At the time both the October and November letters were sent, Defendants were represented by counsel (Brunton). *See* Uncontroverted Facts, ¶ 59. Indeed, the letters were directed to Brunton. *See* Uncontroverted Facts, ¶¶ 49, 53. There is nothing that supports that Countrywide or MERS knew or should have known that Defendants would not understand the letters – which is seemingly what Defendants assert. Likewise, there is nothing that supports that any material fact was concealed.

KC01DOCS\862951.4

Moreover, Countrywide's actions further demonstrate there was no intent to take advantage of Defendants. Even after the filing of this action, Countrywide attempted to provide a means by which Defendants could avoid foreclosure. In February 2006, Countrywide reviewed Defendants current financial condition to determine whether a loan modification was possible. *See* Uncontroverted Facts, ¶ 86. However, based on Defendants' income and expenses at the time (which had changed since McCalla, Raymer reviewed their finances), Defendants would have been unable to make payments at the original level, let alone at any increased amount that would allow the loan to be brought current. *See* Uncontroverted Facts, ¶ 96. This is not the conduct of someone who acted in a fraudulent, deceptive, and unconscionable manner in an effort to lure Defendants out of bankruptcy as Defendants contend.

There is no evidence to support Defendants' claim for violation of the KCPA. Countrywide and MERS are entitled to judgment as a matter of law on this claim.

### 3. Countrywide And MERS Cannot Be Liable For The Actions Of McCalla, Raymer and/or Adam Roche.

In support of both their fraud and KCPA claims, Defendants rely solely upon the representations of Adam Roche contained in the October and November 2005 letters as support. However, Roche was not an employee of MERS or Countrywide – Roche was an employee of McCalla, Raymer. *See* Uncontroverted Facts, ¶ 45.

It is well recognized under Kansas law, that the employer of an independent contractor is *not* liable for the torts or improper execution of work performed by the independent contractor. *See, e.g., Dillard v. Strecker*, 18 Kan. App. 2d 899, 906, 861 P.2d 1372 (1993). An "independent contractor" is "one who, in exercising an independent employment, contracts to do certain work according to his or her own

methods, without being subject to the control of the employer, except as to the results or product of the work." *McCubbin v. Walker*, 256 Kan. 276, Syl. ¶ 2, 886 P.2d 790 (1994).

The Kansas Supreme Court has recognized that the most important factor in determining whether an individual is an employee or independent contractor is "whether the employer controls, or has the right to control, the manner and methods of the worker in doing the particular task." *McCubbin*, 256 Kan. at 281. Whether an individual is an independent contractor or an employee is a question of law when the facts are undisputed. *McCubbin*, 256 Kan. at 281, quoting *Falls v. Scott*, 249 Kan. 54, 64, 815 P.2d 1104 (1991). "Absent special circumstances, a collection agency is an independent contractor." *McDonnell v. Music Stand, Inc.*, 20 Kan. App. 2d 287, Syl. ¶ 3, 886 P.2d 895 (1995) (where plaintiffs alleged, among other things, commission of tort of outrage and intentional infliction of emotional distress as result of phone calls by debt collector contracted to collect on past due accounts against holder of past due accounts, court held debt collector was independent contractor and holder of past due account was not liable for debt collector's actions).

Countrywide did not have the right to control the manner and methods of McCalla, Raymer (or its employees) in handling the Loan. *See* Uncontroverted Facts, ¶ 41. Countrywide contracted with McCalla, Raymer to handle and manage home mortgage loans for which Countrywide is the servicer which are in foreclosure or bankruptcy. *See* Uncontroverted Facts, ¶ 38. Graham's Loan was one of these loans. *See* Uncontroverted Facts, ¶ 38. The manner and method by with McCalla, Raymer handle these loans, however, is not within Countrywide's control. Countrywide does not control the day-to-day activities of McCalla, Raymer (or McCalla, Raymer's employees)

29

in handling or managing the loans. *See* Uncontroverted Facts, ¶ 39. Countrywide does not have the right to monitor, supervise, or discharge any of McCalla, Raymer's employees. *See* Uncontroverted Facts, ¶¶ 40-41. Indeed, the August 16, 2005 letter clearly states that the Loan was targeted by McCalla, Raymer. Countrywide did not pre-approve Defendants for a loan modification, nor did it control whether McCalla, Raymer determined if Defendants were pre-approved. *See* Uncontroverted Facts, ¶¶74-75. Countrywide contracted with McCalla, Raymer to protect the interest in the real property – McCalla, Raymer's efforts in accomplishing this task was not within Countrywide's control. Accordingly, McCalla, Raymer was an independent contractor, and Countrywide cannot be held liable for the representations of its independent contractor's employee. *See Dillard,* 18 Kan. App. 2d at 906.

For these, as well as even more reasons, MERS cannot be held liable for the representations of McCalla, Raymer and Adam Roche. There is no evidence MERS (or any employee of MERS) contacted Defendants. *See* Uncontroverted Facts, ¶ 63. Moreover, Defendants have no evidence of *any* relationship between MERS and McCalla, Raymer (or Adam Roche) *See* Uncontroverted Facts, ¶ 64. The lack of such evidence is not surprising. This action was filed pursuant to a provision in the Mortgage that allows MERS to foreclose. *See* Uncontroverted Facts, ¶ 10. However, MERS is an electronic database designed to eliminate the need for mortgage assignees to record assignments of mortgages to protect their interests and to facilitate purchase and sale of mortgages in the secondary market. *See* Uncontroverted Facts, ¶¶ 61-62. MERS was not involved in the servicing of the Loan. *See* Uncontroverted Facts, ¶ 60. Defendants claims are based upon the representations of an employee of an independent contractor of

KC01DOCS\862951.4

Countrywide. Defendants have *no* evidence that would support a claim against MERS. Accordingly, both MERS and Countrywide are entitled to judgment as a matter of law on Defendants' claims.

### 4. There Is No Evidence Of Any Harm Or Actual Damages.

An essential element of a claim for fraud is damage. *See Alires*, 277 Kan. at 403. *U*nder the KCPA, before a party is entitled to any recovery, the party must be "aggrieved." *See* K.S.A. 50-634(a); K.S.A. 50-636(a). Defendants have no evidence of any harm or damage caused by either Countrywide or MERS. Accordingly, Defendants' claims fail as a matter of law.

Defendants have itemized the total amount of damages they are claiming in this action to be as follows::

$150,000.00 being the value of our home.

Our attorney has advised us to file a motion for punitive damages prior to the pretrial.

Statutory penalties as all owed by Kansas law.

*See* Uncontroverted Facts, ¶ 78.

The basis for Defendants' claim of damages in this action is that absent the alleged "offer" to modify the Loan, they would not have agreed to allow the stay in bankruptcy to be lifted and thus, would have continued to enjoy the protections of the automatic stay in bankruptcy. *See* Defendants' Amended Counterclaim; Defendants' Cross-Claim. However, Defendants' bankruptcy was dismissed shortly after the stay was lifted and before this action was ever filed. *See* Uncontroverted Facts, ¶¶ 15; 29-30. Accordingly, whether or not Defendants had consented to the lifting of the stay, the stay would have lifted automatically upon dismissal of the bankruptcy. *See* Uncontroverted

31

Facts, ¶ 85. Moreover, Defendants apparently ignore that MERS filed a Motion for Relief from the Automatic Stay based upon Defendants failure to make any of the three post-bankruptcy monthly payments that were required to made under the bankruptcy plan. *See* Uncontroverted Facts, ¶ 27. Thus, even if Defendants had not agreed to the lifting of the stay, it is possible the stay would have been lifted by the Bankruptcy Court without Defendants' consent. Thus, Defendants cannot demonstrate that absent their agreement to the lifting of the stay in reliance on the anticipated loan modification, the protection of the stay in bankruptcy would have remained. Such claims are too speculative to support a claim for damages.

It cannot be disputed that Defendants would not have been entitled to a free home even if the Loan had remained in the bankruptcy. *See* Uncontroverted Facts, ¶ 83. Defendants have no evidence that Countrywide (or MERS) agreed to forgive the debt, either in whole or in part. *See* Uncontroverted Facts, ¶ 84. Thus, there is no evidence that would support Defendants' assertion that they are entitled to the value of the Property as damages. Defendants have not yet filed a motion for punitive damages (nor would evidence support such a claim). However, it is well settled that to sustain a claim for punitive damages, actual damages must exist. *Wendt v. University of Kansas Med. Ctr.*, 274 Kan. 966, 982, 59 P.3d 325 (2002).

There is no evidence Defendants sustained any harm or damage as the direct result of the actions of Countrywide or MERS that would support a claim for fraud or violation of the KCPA. Accordingly, Countrywide and MERS are entitled to summary judgment in their favor on Defendants' claims.

32

## V.    **CONCLUSION**

For the foregoing reasons, Countrywide respectfully requests the Court find as a matter of law that: (1) MERS is entitled to an *in personum* judgment against Graham; (2) MERS is entitled to foreclose on the Property, as well as a finding that MERS is the holder of a first and prior lien on the Property and Graham's redemption period following sale of the Property is limited to 3 months; and (3) that all claims raised by Defendants Michelle Graham and David Martinez fail as a matter of law, leaving only the issue of damages on MERS' foreclosure for resolution by the Court.

Respectfully submitted,

**BRYAN CAVE LLP**

By: _____

Staci Olvera Schorgl          KS Bar #19753
Rebecca S. Jelinek            KS Bar #20322
3500 One Kansas City Place
1200 Main Street
Kansas City, MO  64105
(816) 374-3200
(816) 374-3300 (Facsimile)

Attorneys for Plaintiff and Defendant
Countrywide Home Loans, Inc.

KC01DOCS\862951.4

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served via U.S. Mail, postage prepaid, this 23rd day of July, 2007, to:

Paul D. Post
Paul D. Post, P.A.
Shadow Wood Office Park
5897 SW 29th Street
Topeka, KS 66614

Attorney for Defendants
Michelle Graham and David Martinez

Attorney for Plaintiff and Defendant
Countrywide Home Loans, Inc.

KC01DOCS\862951.4