**SO ORDERED.**

**SIGNED this 20 day of April, 2011.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DAVID MICHAEL MARTINEZ and | ) | Case No. 09-40886 |
| MICHELLE CHRISTINE MARTINEZ, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| DAVID MICHAEL MARTINEZ (deceased) | ) | |
| MICHELLE CHRISTINE MARTINEZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 10-7027 |
| | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC. and | ) | |
| COUNTRYWIDE HOME LOANS, INC.[1] | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION AND ORDER MOSTLY DENYING PLAINTIFF'S
MOTION TO RECONSIDER OR TO ALTER OR AMEND JUDGMENT**

_____

[1] Although Countrywide Home Loans, Inc. has changed its name to BAC Home Loans Servicing, LP, the parties continue to refer to it as Countrywide, so the Court will also.

**BUT ALTERING SOME DISCRETE FINDINGS**

The Court is faced with a "Morton's fork:"[2] grant Plaintiff's Motion for Reconsideration or to Alter or Amend Judgment[3] when the facts upon which the motion is almost entirely based could, should, and in fact were known by the movant well before this adversary proceeding was filed, or deny the motion on that ground, resulting in rewarding the creditors in this case for, purposely or not, omitting relevant information when they filed their summary judgment papers. Because the Court finds that even with the facts Plaintiff asserts for the first time, the outcome would have been the same, the motion will be denied.

**I.   FINDINGS OF FACT**

Plaintiff, Michelle Martinez, now known as Graham ("Debtor," "Plaintiff" or "Graham),[4] brought this adversary proceeding on May 5, 2010 only against Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"). She sought an order finding that since Graham owed no money to MERS, that MERS could not enforce the mortgage executed in MERS' name. The Complaint basically incorporated the April 30, 2010 decision of the Kansas Court of Appeals, which held that MERS could not enforce the mortgage because it did not hold the underlying note.[5]

---

[2] This expression means a choice between two equally unpleasant alternatives. John Morton, Lord Chancellor of England in 1487, devised a tax policy which assumed that the rich could afford to contribute and the poor were concealing wealth. He reasoned that if the subject lived in luxury, and it appeared he had thus spent considerable money on himself, he obviously had sufficient income to spare for the king. Alternatively, if the subject lived frugally, and showed no sign of being wealthy, Morton asserted he must have substantial savings and could therefore afford to give it to the king. These arguments were the two prongs of the fork and regardless whether the subject was rich or poor, he had no defense to paying taxes. *See Kohorst v. Van Wert Cnty. Hosp.*, 2010 WL 4883784, 5 (N.D. Ohio 2010) and *Moore v. Czerniak*, 574 F.3d 1092, 1166 (9th Cir. 2009), *rev'd on other grounds Premo v. Moore,* 131 S. Ct. 733 (2011).

[3] Doc. 67.

[4] The other plaintiff/co-debtor is deceased. *See* Doc. 122 (main case), Suggestion of Death, filed September 9, 2010.

[5] 44 Kan. App. 2d 547 (2010).

2

Plaintiff and Countrywide Home Loans, Inc. ("Countrywide") then jointly sought to allow Countrywide to intervene, both claiming that "Countrywide Home Loans, Inc. has **an interest in the property and transaction** that is the subject of the Adversary Complaint against Mortgage Electronic Registration Systems, and should be allowed to intervene as a party defendant therein."[6] Joinder was allowed.

After full discovery was allowed for all parties, they joined in an agreed Pretrial Order;[7] it controls this case. At the conclusion of all discovery, Plaintiff's theory was that Countrywide was merely an unsecured creditor (not that it was not a creditor at all), having lost its interest in the mortgage that was intended to secure the promissory note when Plaintiff executed the mortgage to MERS, as nominee for Countrywide, and not to Countrywide, directly.[8] Most of Plaintiff's theories revolve around her contention that MERS lacked standing to bring a foreclosure action because Plaintiff owes no debt to MERS, and that Countrywide cannot foreclose the mortgage because it has no interest in it. MERS and Countrywide suggested the Court needed to determine "whether MERS and Countrywide held a valid and enforceable lien interest in the property as the mortgagee in the Mortgage and the holder of the note," and whether they were entitled to relief from stay under 11 U.S.C. § 362(d)(2).

On February 11, 2011, after full briefing, the Court entered a Memorandum Opinion and Order that denied Plaintiff's motion for summary judgment, granted Countrywide and MERS'

---

[6]Doc. 12 filed June 18, 2010 (emphasis added).

[7]Doc. 37.

[8]*Also see* Debtors' Objection to Claim in main case, Doc. 106. The only basis asserted was that because the mortgage was split off, Countrywide's claim was now unsecured based on the recent decision of the Kansas Court of Appeals.

3

motions for summary judgment, and overruled Plaintiff's objection to the Proof of Claim. The Court found that the note held by Countrywide was secured by the mortgage, and that Countrywide was thus entitled to foreclose that mortgage on Plaintiff's home (or former home, since she had moved).

On February 24, 2011, Plaintiff timely filed a motion for reconsideration, contending that the Court should set aside its decision and re-open discovery.[9] She contended the Court had made two erroneous findings: 1) that Countrywide was the holder of the note; and 2) that the Court of Appeals' decision was not *res judicata* on the issue of whether MERS was an agent of Countrywide.[10] The basis for this request is her claim that Countrywide and MERS misled the Court by failing to explain that Countrywide had sold its beneficial interest in the note to a third party, Fannie Mae, prior to bankruptcy, and that Fannie Mae "probably" has "securitized the debt and sold it to others as a mortgage-backed security."[11] She contends this "new" evidence requires the Court to withdraw its decision so she can conduct the discovery she would have conducted had she known the truth.

To support her contention that MERS and Countrywide "glossed over the very important, genuine, material facts that the loan was sold by Countrywide to another entity and that Countrywide is not the beneficial owner of the loan," Plaintiff cites to an affidavit dated July 23, 2007 (the Deloney affidavit) that was used by MERS (and by Plaintiff, herself) in the underlying state court foreclosure proceeding. That affidavit clearly noted that Countrywide was now the servicer of the

---

[9] *See* Doc. 84, p. 15, Plaintiff's reply brief, stating the Court "must withdraw its memorandum decision, and should further allow discovery to be reopened so that all of the facts in this case can be obtained . . ."

[10] Doc. 67, p. 2.

[11] *Id*. at p. 5.

loan, having sold its beneficial interest in the note to Fannie Mae."[12] In fact, when Plaintiff sought summary judgment in the state court proceeding, she specifically included as a material fact "50. Fannie Mae is the investor on the Loan," relying on the Deloney affidavit.[13] The state court judge included this fact in his decision entered February 25, 2008.[14]

Accordingly, when Plaintiff filed this Motion for Reconsideration claiming that she did not know (or appreciate) this information, the fact of the matter is that she had known for well over three years of Fannie Mae's involvement in this loan, and Countrywide's status of holder and servicer of the note and mortgage. The Court presumes that although Plaintiff's counsel knew these facts, he was unaware until after the Court decision that others in the local legal community were raising additional issues in the face of similar facts. Therefore, he did not raise these until after receipt of the unfavorable decision.[15]

---

[12] Doc. 46-7, affidavit of Diane Deloney, and specifically ¶7, saying Countrywide is the servicer, and ¶33, saying Fannie Mae is the investor on the loan, which affidavit was submitted by Countrywide in the midst of over 100 pages of pleadings and exhibits filed in support of its summary judgment motion in this Court.

[13] Plaintiff is represented by the same counsel as she was in the state court foreclosure proceeding and appeal.

[14] *See* Doc 43, p. 8 Exhibit 4 to Plaintiff's summary judgment motion.

[15] The Court is certainly not critical of this choice. These are issues on which there has been considerable heat, but little light, for at least a year, mostly in the Motion for Relief from Stay practice. These issues have been discussed, in varying form, on probably every stay relief docket for well over a year, as some Chapter 7 trustees have taken up this cause. Skilled lawyers have elected to raise these issues, and equally skilled lawyers have elected not to raise them. But it is clear that the existence of these arguments was known, and if Plaintiff's lawyer had wished to pursue them, he certainly had enough facts (from the 2007 Delaney affidavit, alone) to pursue discovery on those issues. Similar facts, and legal theories, for example, were at issue in *In re Tucker,* 441 B.R. 638 (Bankr. W.D. Mo. 2010). That case was noted in the Pretrial Order, at Doc. 37, and Plaintiff's initial motion for summary judgment (Doc. 39, p.14) analyzed that case. The *Tucker* decision, which detailed the theory(ies) that Plaintiff apparently now wishes she had raised, to-wit whether downstream purchaser(s) of note from original Lender and Fannie Mae, Aurora Loan Services, LLC, and all subsequent assignees were MERS members such that there was no gap in the chain of title, was thus well known to Plaintiff at the time she moved for summary judgment. She elected not to raise those theories, and it is too late to do so now.

Countrywide's cross-motion for summary judgment and other pleadings, in retrospect, were misleading mostly by omission, but occasionally by commission. For example, it stated unequivocally that it "**is** [present tense] the secured lender under a purchase money mortgage on the subject residence."[16] Countrywide's final reply brief argued that one of the reasons it is entitled to relief is because it "**holds** a purchase money security interest,"[17] and because "Countrywide **has** an actionable purchase money mortgage . . ."[18] Countrywide's continual use of the present tense did, in fact, lead this Court to understand that Countrywide was the present beneficial owner of the note, just like it was on the date it loaned the money.

MERS contributed to this confusion, albeit in only one and maybe two instances, when it added an additional material fact (no. 2) upon which it contended (and Plaintiff agreed) there was no genuine issue: "Upon information and belief, **the Note remains payable to the order of Countrywide**,"[19] notwithstanding the fact that Countrywide had apparently sold its interest in that note to Fannie Mae years earlier and was required to endorse the note in blank (making it essentially payable to any party holding the note). The Court certainly construed this statement to mean that there had been no change in Countrywide's status since the inception of the transaction.[20]

Additional facts will be discussed below, when necessary.

---

[16]Doc. 45, pp. 1-2.

[17]Doc. 55, p. 4.

[18]*Id.* at p. 5.

[19]Doc. 48, p. 4, ¶2.

[20]The other instance is the Hultman affidavit, upon which this fact was based, which indicates that a "true and correct copy of the Note is attached hereto as Exhibit A." *See* Doc. 48-1, ¶3 dated Dec 22, 2010. In this Court's recent experience, the lender-turned-servicer in Fannie Mae transactions typically endorses the note in blank and retains the original as agent for the beneficial owner. The Court could find no such endorsement on the copy attached to the Hultman affidavit.

## II.  STANDARD FOR ANALYZING MOTIONS FOR RECONSIDERATION

Rule 9023 of the Federal Rules of Bankruptcy Procedure incorporates Rule 59 of the Federal Rules of Civil Procedure, and allows for alteration or amendment of judgments on the grounds for relief set forth in Rule 60(b) of the Federal Rules of Civil Procedure, as incorporated in Bankruptcy Rule 9024.[21]  Grounds for relief include mistake, inadvertence, surprise, excusable neglect, fraud or newly discovered evidence.  A motion to reconsider that is filed within fourteen days of the entry of judgment is treated as a motion to alter or amend.[22]

The legal standard for granting a motion for reconsideration is narrow.  "A motion for reconsideration should be granted only to correct manifest errors of law or to present newly discovered evidence."[23]  "Such motions are not appropriate if the movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally."[24]

## III.  ANALYSIS

In the Court's Memorandum Opinion and Order denying Plaintiff's Motion for Summary Judgment, granting Countrywide and MERS' Motion for Summary Judgment, and overruling

---

[21] *See In re Colley,* 814 F.2d 1008, 1010 (5th Cir. 1987).

[22] *See In re American Freight System, Inc.*, 168 B.R. 245, 246 (D. Kan. 1994).  The deadline for filing a motion to alter or amend was recently changed from 10 days to 14 days in connection with the revisions of the Federal Rules of Civil Procedure, which revised deadlines to multiples of 7 rather than 10 days.

[23] *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, n.5 (10th Cir. 2000) (internal quotations omitted).

[24] *Zhou v. Pittsburg State Univ.*, 252 F. Supp. 2d 1194, 1199 (D. Kan. 2003) (citing *Van Skiver v. U.S.*, 952 F.2d 1241, 1243 (10th Cir. 1991); *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (holding it was not an abuse of discretion, on a motion to reconsider, to decline to consider new evidence presented for the first time); *Fox v. Noram Energy Corp.*, 198 F.3d 257 (10th Cir. 1999) (holding that court did not abuse its discretion in denying motion to reconsider because "[a]s to the new information presented in support of the motion [to reconsider], the plaintiffs have not explained why this information was not presented in their initial response to the summary judgment motion.").

Plaintiff's Objection to Proof of Claim of Countrywide, the Court made the following specific rulings:

1) The decision of the Kansas Court of Appeals in *Mortgage Electronic Registration Systems, Inc. v. Graham*,[25] was not *res judicata* on the issue of whether MERS was an agent of Countrywide at all times relevant to this case;

2) MERS held the mortgage on the real property as an agent of Countrywide;

3) The note and mortgage were not irrevocably split when Plaintiff signed a note in favor of Countrywide and executed the mortgage in favor or MERS, and thus the note remained secured by the mortgage;

4) Countrywide held a claim secured by the mortgage held by its agent MERS;

5) Countrywide and MERS were not required to bring a foreclosure proceeding as a compulsory counterclaim in this adversary proceeding under Fed. R. Civ. P. 13; and

6) Countrywide was entitled to relief from the automatic stay to bring a foreclosure proceeding in state court.

Plaintiff now seeks reconsideration of two of the Court's holdings concerning the *res judicata* effect of the Kansas Court of Appeals decision and the holding that Countrywide is entitled to relief from stay to foreclose the mortgage.[26] She does so by, for the first time in these proceedings, arguing that Countrywide is not the beneficial owner of the note, because it sold its interest in the note to Fannie Mae, it is now merely a servicer,[27] and thus it has no standing to bring a foreclosure action.

---

[25] 44 Kan. App. 2d 547.

[26] Plaintiff has not specifically sought reconsideration of the holdings that (1) MERS held the mortgage on Plaintiff's property as an agent of Countrywide (other than through its argument about the *res judicata* effect of the state court decision), (2) the original note and mortgage were not irrevocably split, or (3) that Countrywide and MERS were not required to bring a foreclosure proceeding as a compulsory counterclaim.

[27] These are just a few of the places in the reconsideration papers filed by Plaintiff where she admits or asserts that Countrywide is the servicer: Doc. 67 at pp. 4, 6, 10 (twice), 12, and 13.

As a preliminary matter, the Court agrees with Plaintiff that the appropriate time to raise these "new facts" was in her own summary judgment motion and in her responses to the creditors' summary judgment motions.[28] Plaintiff's counsel readily concedes that he knew or should have known (and should have further inquired during discovery), that Countrywide had sold its beneficial interest in the note to Fannie Mae years earlier.[29] He explains he "did not do the discovery that probably should have been done,"[30] because he believed his *res judicata* argument was correct, and that winning that argument was all needed to do to prevail.[31]

At the same time, Plaintiff is correct in arguing that both Countrywide and MERS selected language in their pleadings that allowed the Court to believe that there had been no change in Countrywide's status as both holder and owner of the note, as evidenced by the findings of fact. Having said that, the Court finds that ultimately, as discussed below, the belated arguments and facts

---

[28] These theories and facts should also have been included in the Pretrial Order.

[29] *See* Plaintiff's Reply to Defendants' Responses to Plaintiff's Motion to Reconsider or to Alter or Amend Judgment, Doc. 84 at p.11, where he states: "Plaintiff's counsel will readily concede that he should have been more diligent in the discovery process in order to obtain these documents" and that he "should have been directing these questions to MERS and Countrywide before the close of discovery and not as part of a motion to reconsider."

[30] *Id*. Plaintiff's counsel also readily admits that in addition to the discovery he was allowed during both the contested matter in the main case and the Adversary Proceeding in the bankruptcy court, "[e]xtensive discovery had been completed in the state court case." Doc. 134 at p. 18. *See also* "MERS and Countrywide, as well as Martinez and Graham, took full advantage of the discovery process in the state court case . . ." *Id*. He notes (on p. 18 of his Motion to Reconsider, Doc. 67) that he deposed Gloria Craig, the manager of the loss mitigation and bankruptcy unit of the law firm of McCalla Raymer, which represented Countrywide during the Graham/Martinez 2005 bankruptcy. Accordingly, this is not a situation where a quick summary judgment motion deprived a party of the ability to discover as much as was needed to support whatever theories the party wished to advance. In addition, Plaintiff (in Doc. 84) now argues that although MERS revealed the existence of numerous core documents in its Rule 26(a) disclosure that might have jogged his memory about what he already knew about the ownership of the note (including the "MERS Milestones for MIN 1000157000011338262, MERS Governing Documents, consisting of the BAC Home Loans Servicing Amended, the MERS Membership Agreement, as amended, the MERS Rules of Membership, MERS Terms and Conditions, and the MERS procedures manual"), it had some obligation to also turn over those documents without a request for production. He never suggests he made such a request, and Rule 26(a)(1)(A) does not require turnover of the disclosed documents. It only requires a description by category and location of such documents, which MERS apparently provided.

[31] Doc. 84. This is why alternative arguments are allowed.

9

raised by Plaintiff should not, and thus will not, alter the outcome,[32] notwithstanding the Court's disappointment with how Defendants chose to brief the case.

      A.     **Plaintiff has failed to show that the Court erred in holding that Countrywide is a holder entitled to enforce the note and mortgage.**

Plaintiff's first argument is that Countrywide is merely a servicer for Fannie Mae, and thus lost its status as a secured creditor after it sold its beneficial interest in the note to Fannie Mae. Therefore, according to Plaintiff, Countrywide does not have a sufficient interest in the note to enforce it against Plaintiff on its own behalf. In addition, Plaintiff now asserts that Countrywide has not produced any evidence that Fannie Mae, or anyone else holding the beneficial interest in the note, has authorized Countrywide to act on its behalf in seeking relief from stay or foreclosure, although she did not elect to raise this theory earlier.

---

[32] The Court is aware that other cases presenting similar issues are currently pending before this Court, and that the attorneys in those cases may raise additional arguments on the issues presented in this case. In fact, the Court is advised that as this opinion was being finalized, plaintiffs in another case against a different defendant *(Heath v. US Bank*, NA, AP No. 11-7017) filed a motion to consolidate this case with that case "for purpose of determining legal issue." *See* Doc. 7, filed April 15, 2011 in the *Heath* case, only. Likewise, Plaintiff now suggests, on reconsideration, that this Court join this case with *In re Campoverde*, Case No. 10-41685, where the case trustee was making similar arguments to those Plaintiff now belatedly raises. At a recent hearing, the movant who sought a Motion for Relief in the *Campoverde* case has indicated it intends to withdraw that motion. Even if that was a live motion, it would not be appropriate at this stage of the proceedings to delay this decision because Plaintiff's counsel has recently become educated that new arguments exists that might have led to discovery that might today prove fruitful (but may not—counsel admits he is guessing at this point). In addition, in the *Heath* case, the answer was filed only days ago, and discovery will not be concluded for at least five months.

    The Court will obviously be willing, as it is in any situation, to revisit these issues based on different facts or new arguments raised in those cases. The Court is required, however, to decide this case between these parties, and based on the facts and arguments timely raised by the parties in this case, alone. It declines to delay ruling merely because some issues may overlap with other cases.

Despite the fact the history of the note was not overtly disclosed[33] by any party prior to issuance of the decision, the Court nonetheless finds that its prior decision finding Countrywide is entitled to relief from the automatic stay was nevertheless correct based on the undisputed material facts properly presented to the Court. This finding is corroborated by the admissions contained in Plaintiff's reconsideration papers.

The law of the state of Kansas applies to the issues in this case. The promissory note is a negotiable instrument,[34] and as such it is subject to Article 3 of the Kansas Uniform Commercial Code ("UCC").[35] Under the UCC, an instrument may be enforced by "(a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to K.S.A. 84-3-309 or 84-3-418(b)."[36] Further, a person is "entitled to enforce the instrument even if the person is not the owner of the instrument or is in wrongful possession of the instrument."[37] "Holder means a person who is in possession of . . . an instrument . . . issued or indorsed to the person or the person's order or to bearer or in blank."[38] "[A] person who is a holder remains a holder

---

[33] Plaintiff argues that if the Court had only focused on two lines on one page out of over 80 pages of exhibits attached to her summary judgment motion (Doc.39), it would have known these facts when issuing its decision. She makes this argument while overlooking that she, herself, did not find these facts noteworthy enough to even mention in her Pretrial Order contentions, her summary judgment motion or her reply [noting that Fannie Mae was now the owner and Countrywide the servicer]. This Court suggests a better approach would have been for Plaintiff to have made this clear in her own undisputed facts, or to deny the accuracy of statements to the contrary contained in Defendants' facts, if those facts were truly material. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir.1995) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs."))

[34] K.S.A. 83-3-104 (Supp. 2010).

[35] K.S.A. 84-1-101 *et seq.*

[36] K.S.A. 84-3-301 (1996).

[37] *Id.*

[38] K.S.A. 84-1-201 (Supp 2010).

although that person has made an assignment of a beneficial interest therein."[39] "Consequently, the payee in possession of a note is the holder and may bring suit on the note even though the payee had already assigned the note as 'the holder of an instrument whether or not he is the owner may . . . enforce payment in his own name.'"[40]

The rights of a holder of a note to enforce that note, despite the note being sold, is further explained by one commentator on the UCC:

> No distinction is drawn by the Code in terms of whether the "holder" is the holder for his or her own use and benefit or whether the holder holds as a fiduciary for another. Thus, the fact that a holder is not the owner who is entitled to keep the proceeds for his or her own personal use does not affect the holder's right as holder to sue on the instrument. A holder may sue in his or her own name alone although holding the paper as a fiduciary for another, and there is no obligation to join such other party as a co-plaintiff. This is true even though the holder does not have any express authorization from the beneficial owner of the paper to bring suit.[41]

Based upon these clear provisions of the UCC, Countrywide is entitled to enforce the note against Plaintiff upon a showing that (1) the note is made payable to Countrywide or is endorsed in blank and (2) Countrywide remains in possession of the note. The fact that it may no longer be the beneficial owner of the note is immaterial regarding its ability to enforce the note.[42]

In its numbered facts about which it contended there was no material issue of fact, MERS stated in its summary judgment motion that "the Note remains payable to Countrywide and

---

[39] 1 Anderson U.C.C. § 1-201:259 (3d. ed. 2010).

[40] *Id.* (quoting *Edwards v. Mesch*, 763 P.2d 1169 (N.M. 1988)).

[41] *Id.* at § 3-301:7 (internal citations omitted).

[42] *See In re Hwang*, 396 B.R. 757, 766 (Bankr. C. D. Cal. 2008), *overruled on other grounds* 438 B.R. 661 (C. D. Cal. 2010) (holding that party who was still in possession of original mortgage note made payable to that party was entitled to enforce the mortgage note in its capacity as "holder" despite the fact the beneficial interest in the note had been sold to a third party). Interestingly, the District Court, in reversing two other holdings of the bankruptcy court, held that a financial institution in possession of the note is a real party in interest under Fed. R. Civ. P. 17(a)(1), with standing to move for relief from stay, and also that the beneficial owner is not an indispensable party to the stay relief proceeding pursuant to Fed. R. Civ. P. 19(a)(1)(B).

Countrywide is in possession of the original Note."[43] This statement of fact was supported by the affidavit of William C. Hultman, Treasurer of MERS, and Plaintiff unequivocally agreed that this statement of fact was "[u]ncontroverted," with no qualifications or exceptions. Plaintiff is bound by that admission, notwithstanding her belated wishes that she had not admitted it, that she had challenged the capacity of the affiant to make the statement, and that she had opted to do more discovery that might have revealed additional information about these facts.

A motion for reconsideration is not the time to contest facts that were previously admitted because an adverse result was obtained,[44] however, let alone a time to ask a court to reopen discovery so evidence previously deemed unimportant enough to pursue through discovery can now be sought. Based upon the facts Plaintiff unequivocally admitted after a full opportunity to conduct whatever discovery she wanted in two different courts, the Court still finds that Countrywide currently is in possession of the original note, which "remains payable to Countrywide." Plaintiff does not try to controvert that finding with her "new" evidence. Therefore, Countrywide has the authority under the UCC to enforce the note notwithstanding that it has sold the beneficial interest in the note to Fannie Mae. This is true regardless whether or not Fannie Mae has expressly authorized Countrywide to enforce the note.[45]

---

[43] See Doc. 48 at p.4.

[44] Although Plaintiff obtained some information from the internet, after summary judgment had been entered, that again informed her of Fannie Mae's interest in the note, Plaintiff still has produced no evidence to refute the fact that Countrywide holds the original note. Plaintiff does cite to rules regarding the sale of notes to Fannie Mae that require the note to be endorsed upon any sale. However, as Defendants note, the rules that Plaintiff cites instead require the note to be endorsed <u>in blank</u> upon any sale to Fannie Mae and retained by the servicer (in this case Countrywide). So even assuming Countrywide has complied with Fannie Mae requirements, the note would still be in its possession and would be endorsed in blank—again making it a holder in possession of the note entitled under the UCC to enforce it against Plaintiff.

[45] The Court does recognize that Countrywide could transfer possession of the original note to another entity at some point following entry of this order. The Court's finding that Countrywide is today the holder of the note may therefore not be controlling in a future proceeding to actually foreclose on the mortgage if Countrywide no longer possesses the original note.

Therefore, the only potential defense that Plaintiff could raise at this point is that Countrywide, although a creditor entitled to enforce the note, is not entitled to also enforce the mortgage.[46] But Plaintiff has unequivocally admitted that pursuant to the MERS agreement, MERS is obligated "to take instructions from the note holder . . . ."[47] Because the Court has already held—and Plaintiff doesn't seriously argue otherwise—that Countrywide is the holder of the note (as opposed to the beneficial owner thereof), MERS is still obligated to take instructions from Countrywide.

This point was raised in the original briefing. Plaintiff admitted[48] the following statement of fact submitted by MERS as its fact No. 13:

> Pursuant to section 3 of the MERS Terms and Conditions MERS agrees that it will take instructions from the **note holder** and in the absence of contrary instructions from the note holder, MERS shall comply with instructions from the **servicer** shown on the MERS® System, in accordance with the Rules and Procedures of MERS.[49]

Plaintiff has also admitted that Countrywide serves as the servicer, and provides no basis to suggest (other than conjecture that if allowed additional discovery, she might find some different facts) that MERS would be acting ultra vires to assign the mortgage to Countrywide to allow it to proceed to foreclose in state court.

---

[46] *See* 11 U.S.C. § 101(10) (defining a creditor as an entity that has a claim against the debtor) and 11 U.S.C. § 101(5)(A) (defining a claim as a "right to payment"). *See also* 2 Collier on Bankruptcy ¶ 101.10 (Alan N. Resnick & Henry J. Somers eds., 16th ed.) (stating that "in contrast to prior law under Section 1 of the Act, a creditor is no longer required to *own* the claim) (emphasis in original).

[47] *See* Memorandum in Support of MERS' Cross-Motion for Summary Judgment, Doc. 48 at p. 8, ¶13.

[48] Plaintiff admitted the fact in her response to summary judgment, Doc. 51, p. 6.

[49] This was supported by the Hultman affidavit, which attached a portion of the MERS Terms and Conditions at ¶3 (Doc 48-1, p.18), and the same language is also contained in MERS Rules of Membership, Rule 2, Sec 6 attached to Hultman affidavit at Doc 48-1, p.24) ("MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes. In the absence of contrary instructions from the beneficial owner, MERS and Mortgage Electronic Registration Systems. Inc. may rely on instructions from the servicer shown on the MERS® System in accordance with these Rules and the Procedures . . . ") (emphasis added). Plaintiff also attached these rules as Exhibit 8 to its Motion to Reconsider, Doc. 75.

14

Plaintiff also seems to suggest that in these instructions the term "note holder" must mean the same as "beneficial owner." She then concludes from that assumption that because she has recently remembered that Countrywide is not the beneficial owner, the fact that Countrywide is "only" the note holder does not give Countrywide the right to enforce the note and foreclose the mortgage. But she attached MERS rules in her reconsideration papers, and in other paragraphs of those rules, including in Rule 8, it specifically states that "the beneficial owner" of such mortgage loan **or its servicer** shall determine whether foreclosure proceedings shall be conducted." So not only does the MERS agreement Plaintiff relies on to seek reconsideration specifically differentiate between the note holder and the beneficial owner (and give powers to the note holder), but it also gives rights to the servicer (a position Plaintiff frequently admits Countrywide holds in her reconsideration papers).[50]

Because the MERS agreement allows either the holder or beneficial owner (who Plaintiff now suggests is Fannie Mae or "possibly" others) or the servicer (which Plaintiff agrees is a position that Countrywide also occupies) to determine whether to file foreclosure, the fact Plaintiff did not earlier remember Fannie Mae's involvement does not change the outcome of this dispute, nor provide a basis for reopening discovery.

Admittedly, the Court did previously hold that MERS holds the mortgage as an agent for Countrywide, who in turn was authorized to enforce the note secured by the mortgage. Based on the information Plaintiff belatedly points to, as contained in the 2007 Deloney affidavit which was a part of the voluminous record before this Court, the Court does revise its finding that MERS holds the mortgage as agent for Countrywide. Instead, based on information Plaintiff has now provided, as

---

[50]*See* n.29, *supra.*

corroborated by the reply of MERS, MERS holds the mortgage as an agent, but pursuant to the contract, can take instructions from either the note holder or the servicer—and Countrywide is both. Accordingly, Countrywide can direct MERS to assign the note to it, which will enable Countrywide to enforce the mortgage. These rights provide sufficient bases for this Court to grant relief from stay to Countrywide to allow it to pursue foreclosure in state court, just as it held in its original decision.[51]

> **B. Plaintiff has failed to establish that the Court erred in holding that the Kansas Court of Appeals' decision in *Mortgage Electronic Registration Systems, Inc. v. Graham*,[52] was not *res judicata* on the issue of whether MERS was an agent of Countrywide at all times relevant to this case**.

The second issue raised by Plaintiff in her motion for reconsideration is that the Court erred in holding that the *Graham* decision was not *res judicata* as to the issue of whether MERS was an agent of Countrywide. In *Graham*, the Kansas Court of Appeals dismissed the appeal from the state court foreclosure judgment on the basis that there was insufficient evidence in the record to establish that MERS was acting as an agent for Countrywide, and because there was no evidence that MERS had suffered an injury caused by Plaintiff failing to pay the note. This Court held, in its prior decision, that Countrywide and MERS did not have a full and fair opportunity to litigate the standing issue under the unique procedural setting of that case. The Court recognized that the issue concerning whether MERS was an agent of Countrywide was addressed at the trial court level, but that issue was never contested, as even Plaintiff insisted that MERS was an agent of Countrywide.

---

[51] *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990) (holding that questions of the validity of liens are not generally at issue in a 11 U.S.C. § 362 relief from stay hearings, but only whether there is a colorable claim of a lien on property of the estate) (citing *Matter of Quality Elec. Ctrs.,* 57 B.R. 288 (Bankr. N.M. 1986)).

[52] 44 Kan. App. 2d 547.

16

It was not until the Kansas Court of Appeals raised the issue, post-*Landmark National Bank v. Kesler*,[53] that Plaintiff raised the agency issue.

Whether Graham intended to wait until the appellate level to raise this, or not, the point is MERS had no reason or incentive to present exhaustive evidence about its agency relationship, because Martinez needed that fact to be true (and admitted it was true) to win on her claim against Countrywide for misrepresentation. If a defendant admits, for example, that she signed a promissory note, is the creditor then required to put a witness on the stand who saw her sign the promissory note to prove that she signed the promissory note? Of course not, and no litigant would do so, and no busy trial court would be happy to endure testimony about a stipulated fact.

Had Martinez disputed the agency relationship, and MERS thus needed to prove it and did not, then it would have had a fair opportunity to litigate. But when Martinez admitted, if not insisted, the agency relationship, and MERS knew it had met its burden on this issue, it is simply not fair to MERS to hold that it failed to prove with additional or better evidence what was already an undisputed fact.

Plaintiff's motion for reconsideration essentially rehashes the same arguments she previously made, and which this Court thoroughly considered, but rejected. The Court finds that Plaintiff has not raised any additional facts or arguments that would cause the Court to decide this issue differently today. The Court again finds that the *Graham* decision does not prohibit this Court from finding that MERS has now presented sufficient evidence that it was acting as an agent in holding the mortgage in this case. Therefore, the Court denies the motion for reconsideration on this basis, as well.

---

[53] 289 Kan. 528 (2009).

17

Case 09-40886   Doc# 150   Filed 04/20/11   Page 17 of 19

## IV. CONCLUSION

For the reasons set forth above, the Court generally denies the Plaintiff's Motion to Reconsider or to Alter or Amend Judgment.[54] In its prior decision, the Court did not need to, and thus admittedly did not, drill down to the fact that Countrywide is the holder of the note and the servicer under the parties' agreements, rather than the beneficial owner, because it was not raised by any party as a material fact in dispute. Instead, the Court admittedly followed the path laid by Plaintiff, then extended by Defendants, suggesting Countrywide remained both the owner and holder of the note.

The Court agrees that especially Countrywide, but to a lesser extent, MERS, allowed the Court to believe that Countrywide still owned the note. The Court does not decide whether they intended to mislead the Court, or were merely capitalizing on a situation where opposing counsel either did not appreciate certain potential issues, or elected not to raise them. The bottom line is that although the Court misunderstood Countrywide's ownership status, now that it is fully informed, the basic decision must stand for the reasons set forth above.

At some point, litigation must come to an end.[55] That is why courts set discovery deadlines, require final pretrial orders that govern the remaining course of the proceeding, and issue decisions. Plaintiff's Motion to Reconsider basically asks this Court to allow a "do-over," because the theories she elected to pursue lost, and she wants a second bite at the apple so she can try theories she either

---

[54] The decision never states that Countrywide is the beneficial owner of the note, but the Court did assume that was the case. The parties essentially stipulate now that it is not, but that it is instead merely the holder of the note and also acts as the servicer. The Court thus revises its opinion to clarify, to the extent it needs to be clarified, that Countrywide is not the beneficial owner of the note in question, but is merely the holder of the original note and the servicer. In addition, the Court revises its finding that MERS holds the mortgage as agent for Countrywide. Instead, based on information Plaintiff has now provided, as corroborated by the reply of MERS, MERS holds the mortgage as an agent, but pursuant to the MERS contract with its members, can take instructions from either the note holder or the servicer—and Countrywide (as a MERS member, which Plaintiff, again, admitted) is both.

[55] *Cf.*, *Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275 (10th Cir. 2010).

18

knew about and elected not to pursue, or simply did not know to pursue. This the Court cannot allow.

**IT IS, THEREFORE, BY THE COURT ORDERED** that Plaintiff's Motion to Reconsider or to Alter or Amend Judgment[56] is generally denied, except as noted in footnote 51.

### 

---

[56]Doc. 67.